CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 30 2010

JOHN F. CORCORAN, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AARON SUTTON, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:10CV00070 |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| GENE M. JOHNSON, ET AL., | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff Aaron Sutton, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Sutton alleges that the defendant prison officials negligently housed him with a violent gang member who physically assaulted him. He also alleges that officials have wrongfully applied classification rules and delayed transferring him to a lower security prison. Upon review of the record, the court finds that the complaint must be dismissed.

## Background

In his original complaint, Sutton named several officials as defendants and alleged the following grounds for relief:

1. Plaintiff was personally injured by another inmate because of negligent supervision and classification;

2. Plaintiff was denied due process when prison officials failed to file any response to his November 2008 annual review, so he sought an interim reclassification.

3. Plaintiff's November 2009 annual review by Mrs. King was discriminatory and violated due process.

Sutton alleged no facts in support of these claims, so the court granted him an opportunity to amend. Sutton filed two motions to amend, which the court will grant (Dkt. Nos. 6 & 7). Upon review of Sutton's allegations as amended, however, the court concludes that his claims must be summarily dismissed.

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." In reviewing the case for possible summary dismissal, the court must accept allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). The factual allegations in the complaint must contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). After review of Sutton's allegations as amended, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

A. **Failure to Protect**

On June 7, 2008, officials at Wallens Ridge State Prison moved Sutton into C-Building, Unit 6, Cell 618. Sutton's new cell mate was Kendell Epperson, a well known Bloods gang member, who had just been released on June 7, 2008 from segregation where he had been serving time for violence. Epperson also had a higher security classification than did Sutton, who was classified as a security level 4. Sutton spoke with Building Lieutenant Still several times, asking to be moved out of the cell with Epperson. On August 7, 2008, Epperson "viciously assaulted" Sutton, causing cuts above and below his left eye. Sutton was held in the medical unit for nine days after the attack. He filed a criminal complaint against Epperson, and on March 27, 2009, in Wise County General District Court, Epperson was convicted of assault and sentenced.

Prison officials have a duty to take reasonable measures to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, not all inmate-on-inmate injuries translate into constitutional liability for prison officials and officers. See id. at 834. Prison officials cannot be found liable under the Eighth Amendment for failing to protect an inmate unless the official knows of an excessive risk of danger to inmate health and safety, and the official knowingly and deliberately acts, or fails to act, in a manner that uniquely increases the risk. See Farmer, 511 U.S. at 837; Rich v. Bruce, 129 F.3d 336, 338-40 (4th Cir.1997). This is a subjective test which requires that the official was aware of facts from which the inference of danger could be drawn, and that he drew the inference. Farmer, 511 U.S. at 837. The Eighth Amendment is not violated by negligent failure to protect inmates from violence. Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991).

Sutton's allegations are not sufficient to state a plausible claim that any of the defendants knew that Epperson posed an excessive risk of harm to Sutton when the two men were assigned to the same cell. Epperson's alleged membership in a gang known for violence and his recent segregation sentence for unidentified violence did not put Officer Still on notice that Epperson posed a specific risk of harm to his cell mates or to Sutton in particular. Even after being asked to amend, Sutton does not allege that Epperson had made any threats to harm him or, if so, that he had communicated such threats to Still or other officers or that he had informed them of any other reason that Epperson posed an excessive risk of harm to Sutton, personally. Accordingly, the court cannot find that Sutton's allegations support a deliberate indifference claim under Farmer, 511 U.S. at 837.

Sutton's complaint asserts that the decision to house a high security inmate like Epperson with a lower security inmate like Sutton represented negligent supervision. Such allegations of negligence are not actionable claim under § 1983. Moore, 927 F.2d at 1316. To the extent that Sutton may be raising negligent supervision claims under state law, the court declines to exercise supplemental jurisdiction over such claims. See 28 U.S.C. § 1367(c).

**B. Denial of Reclassification and Transfer**

Sutton asked his counselor, Mrs. King, on June 24, 2009, for information about the results of his November 2008 annual review. King advised Sutton that no results had been returned from Central Classification and that results were not expected within any certain time period. Sutton then asked several times, verbally and in writing, to receive an interim review. Mrs. Hensley responded that his situation did not meet the criteria for an interim review under

VDOC policy. Sutton argues that policy would permit his interim review. No such review was granted, however.

In 2007 and 2008, after his annual review, Sutton was approved to be housed at a security level 4 institution. He asked why he had not been transferred away from Wallens Ridge, which has a higher security level. In December 2009, Mrs. Hensley informed him that Wallens Ridge was waiting for Central Classification to approve Sutton's transfer.

When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). For example, inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224 (1976).

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

Id. at 224-25. Moreover, an inmate's place of confinement is necessarily subject to the broad discretion of those parties managing the prison. Gaston, 946 F.2d at 343.

Nevertheless, confinement does not strip inmates of all liberty interests, and state prison regulations may create liberty interests. Id. Such liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Courts have found that Virginia's

classification scheme governing prisoners' custody, security, and good conduct earning levels does not create a liberty interest in avoiding changes in these classifications, since an inmate's status in each of these areas is subject to change, based on his own behavior and the discretion of prison officials. Oliver v. Powell, 250 F. Supp.2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp.2d 933, 943 (W.D. Va.1996). A state's failure to abide by its own procedural regulations before imposing disciplinary segregation or another less than favorable housing assignment is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

Under these principles, Sutton's allegations fail to state any due process claim actionable under § 1983. First, he has no independent constitutional right to be housed in a prison of any particular security level. Second, Virginia's security classification system does not create any federally protected liberty interest in being housed in a particular prison. As such, the defendants are not violating any constitutionally protected right by continuing to house him at Wallens Ridge in a more restrictive environment, despite his admirable security scores. They are merely exercising their discretion concerning the appropriate housing assignment for him and for the other thousands of VDOC inmates.

Third, even assuming that VDOC procedural regulations support an interim reclassification in Sutton's circumstances or authorize his transfer to an institution matching his security level, violations of state regulations do not give rise to any federal constitutional claim. Riccio, 907 F.2d at 1469. Thus, even if Sutton could prove that defendants violated VDOC procedures by failing to provide timely annual review results or by failing to transfer him to a lower security institution, he still would not have a federal constitutional claim actionable under

§ 1983 regarding these actions. Finally, to the extent that Sutton may have some claim against the defendants under state law or the VDOC regulations themselves, such state law claims are not independently cognizable under § 1983.[1] The court will summarily dismiss all of Sutton's due process claims, pursuant to § 1915A(b)(1), for failure to state a claim.

### C. Equal Treatment

Sutton alleges vaguely that officials have somehow discriminated against him, or violated his equal protection rights, with relation to his claims that he should be reclassified and transferred. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prove an equal protection claim, a litigant "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Prisoner litigants must generally demonstrate that any unequal treatment is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). Sutton fails to allege any facts indicating that his classification problems are any different than those other inmates occasionally encounter. He also fails to indicate any ground on which the delay in his annual review results and requested transfer resulted from anyone's intention to discriminate against him. Any attempted equal protection claim must be dismissed accordingly, pursuant to § 1915A.

---

[1] To the extent that Sutton might have some actionable claim against the defendants under state law or the VDOC procedures themselves, the court declines to exercise supplemental jurisdiction over such claims, pursuant to § 1367(c), and will dismiss them without prejudice.

**D. Threats and Retaliation**

In one of his amendments (Dkt. No. 6),[2] Sutton alleges that Sgt. J. Collins filed a retaliatory disciplinary charge against him on April 2, 2010, the day after he filed his first amendment to this lawsuit. In support of this claim, Sutton alleges the following sequence of events. In November 2009, Sutton tried to speak with Collins about another officer's "discrimination regarding work." Collins "twist[ed] the conversation and threatened to lock [Sutton] up in segregation, stating, 'I don't need a reason to lock you up.'"

Several months later, on April 2, 2010, Collins ordered one of his officers to charge Sutton with a disciplinary offense for being in his bunk during count. Sutton argues that under VDOC procedures, this offense should have been informally resolved, particularly given Sutton's exemplary behavioral record. Nevertheless, Sgt. J. Kelly served a disciplinary charge on Sutton and told him, "I [going to] do you [a] favor and punish you before the charge is heard, before you are found guilty of this charge and place you on work suspension and give you three work hours for the Wee[k] . . . ."

Sutton's allegation that Collins threatened in November 2009 to move him to segregated confinement for no reason fails to state any actionable constitutional claim. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (finding that verbal abuse and harassment by guards

---

[2] In a later submission, styled as an affidavit, Sutton asserts that at the April 14, 2010 disciplinary hearing for the "false" charge, the hearing officer was W. R. Hensley, whose wife was named as a defendant in the original complaint. Sutton alleges that Mr. Hensley retaliated against him for the lawsuit by refusing to resolve the matter informally and denying him the opportunity to cross examine a correctional officer. Sutton also asserts that Hensley should not have conducted the disciplinary hearing because of his bias against the accused. Sutton does not expressly state that he wishes to amend his complaint to raise new claims arising from the April 14, 2010 hearing. Moreover, given the fact that he prepared this "affidavit" on April 16, 2010, he had not yet had time to exhaust available administrative remedies as to any retaliation claims against Hensley, as required before he may bring such claims in a federal lawsuit. See 42 U.S.C. § 1997e(a). For these reasons, the court will not construe the affidavit (Dkt. No. 11) as an additional amendment to the lawsuit.

does not state any constitutional claim). Therefore, this aspect of Sutton's claim must be dismissed, pursuant to § 1915A.

Sutton's primary claim against Collins is that the officer retaliated against him on April 2, 2010 by causing Sutton to receive a false disciplinary charge. Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Thereafter, plaintiff must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir.1993). Additionally, the inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Conclusory assertions that an act constituted retaliation are insufficient to state an actionable claim under § 1983. Adams, 40 F.3d at 74.

Sutton fails to state a retaliation claim against anyone under these principles. Certainly, his pursuit of this lawsuit represents the exercise of his constitutional right to access the courts. However, the complaint has not yet been served on any of the named defendants, and Sutton fails to allege facts indicating any other manner in which Collins would even have been aware on April 2, 2010 that a lawsuit had been filed against him. Even assuming that Collins did know about the lawsuit, that fact alone does not support an inference that the lawsuit motivated him or

the other officers involved to charge Sutton with the disciplinary offense. Sutton fails to allege any other facts connecting the filing of his lawsuit and/or amendment and the filing of the disciplinary charge. His conclusory assertions that the event constituted retaliation are not sufficient to state any actionable § 1983 claim here and must be dismissed.

### **Conclusion**

For the stated reasons, the court concludes that Sutton's complaint as amended fails to state any constitutional claim cognizable under § 1983 and must, accordingly, be dismissed without prejudice, pursuant to § 1915A. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of APRIL, 2010.

/s/ Jackson L. Kiser
United States District Judge